**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shannon Martino, | No. CV-17-00566-TUC-BPV |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Shannon Martino filed the instant action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) seeking review of the final decision of the Commissioner of Social Security. The Magistrate Judge has jurisdiction over this matter pursuant to the parties' consent under 28 U.S.C. § 636(c). (Doc. 17.) The matter is now fully briefed before this Court. (Docs. 18-20.) For the following reasons, the Court affirms the decision of the Commissioner.

## I. PROCEDURAL HISTORY

On August 6, 2013, Plaintiff filed an application for disability and disability insurance benefits (Administrative Record (AR) 221-24) and a Title XVI Application for Supplemental Security Income (AR 225-30). Plaintiff alleged disability as of January 1, 2008 due to permanent mental disability, post-traumatic stress disorder, bipolar disorder, and personality disorder. (AR 98.) Plaintiff's application was initially denied on December 19, 2013 (AR 107), and upon reconsideration on July 2, 2014 (AR 132). After requesting a hearing (AR 168), on April 4, 2016, Plaintiff testified before an Administrative Law

Judge (ALJ) (AR 72-96). The ALJ issued an unfavorable decision on June 1, 2016. (AR 18-36.) The Appeals Counsel denied Plaintiff's Request for Review on September 11, 2017 (AR 18), making the ALJ's decision the Commissioner's final for the purposes of review.

Plaintiff filed the instant action on November 17, 2017. Plaintiff first claims that the ALJ did not account for all of Plaintiff's limitations when formulating the Residual Functioning Capacity (RFC). (Doc. 18 at 2.) Specifically, the ALJ failed to evaluate Plaintiff's limitations in the areas of concentration, persistence, and pace; and erroneously determined that Plaintiff's physical ailments were not severe. *Id*. Second, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for finding that Plaintiff's subjective symptoms were not credible. *Id.*

## II. SUMMARY OF ALJ'S FINDINGS

The burden of demonstrating disability lies with a claimant. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). To do so, a claimant must show that a physical or mental impairment precludes substantial gainful activity, and it is anticipated that this impairment will either result in death or last continuously for at least a year. 42 U.S.C. §§ 423(d)(1).

An ALJ determines whether a claimant is disabled through a five-step sequential evaluation. *See* 20 C.F.R. §§ 404.1520, 416.920. A claimant must establish: (1) she has not performed substantial gainful activity since the alleged disability onset date ("step one"); (2) she has a severe impairment(s) ("step two"); and (3) her impairment(s) meets or equals the listed impairment(s) ("step three"). *Id*. "If the claimant satisfies these three steps, then the claimant is disabled and entitled to benefits. If the claimant has a severe impairment that does not meet or equal the severity of one of the ailments listed[,] . . . the ALJ then proceeds to step four, which requires the ALJ to determine the claimant's . . . RFC." *Dominguez v. Colvin*, 808 F.3d 403, 405 (9th Cir. 2015). "After developing the RFC, the ALJ must determine whether the claimant can perform past relevant work." *Id*. Then, at stage five, "the government has the burden of showing that the claimant could perform other work existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience." *Id.*; 20 C.F.R. §§ 404.1520, 416.920.

In this case, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2008. (AR 23.)

At step two, the ALJ determined that Plaintiff had severe impairments, including bipolar mood disorder and personality disorder. (AR 24.) But, the ALJ noted that Plaintiff's back, knee, and shoulder pain caused no more than minimal limitations, and therefore were not considered severe. *Id*.

Then the ALJ decided–at step three–that the Plaintiff's impairments did not meet or equal the listed impairments either singularly or in combination. *Id*. The ALJ said Plaintiff had not demonstrated her mental impairments met the criteria for either Listing 12.04 (Affective Disorders including Bipolar) or Listing 12.08 (Personality Disorders). *Id*. The ALJ concluded that Plaintiff exhibited no marked restrictions in function and no periods of decompensation, both of which are necessary for a disability determination under paragraph B of the Listings for mental impairments. (AR 25.) Nor did Plaintiff meet the paragraph C requirements because there (1) were no periods of decompensation, (2) was no indication a change of environment would cause decompensation, (3) was no evidence that an increase in mental demands would cause Plaintiff to decompensate, and (4) was no record of a year-long history of Plaintiff requiring a highly supportive living arrangement. *Id*.

At step four, the ALJ stated that given the limiting effects of her ailments, Plaintiff's RFC permitted a "full range of work at all exertional levels but with certain nonexertional limitations." (AR 26.) These restrictions required that work needed to be "limited to unskilled tasks learned in 30 days or less not performed as a member of team or crew. Additionally, the assigned work must require no more than occasional, brief, intermittent, incidental contact with coworkers, supervisors, and public." *Id*. Based on this assessment, the ALJ concluded that Plaintiff could perform past relevant work as a cleaner. (AR 29.)

Finally, at step five, given Plaintiff's RFC, age, education, and work experience, the ALJ found that Plaintiff was not disabled and that work for Plaintiff existed "in significant numbers in the national economy" as a stock clerk or dishwasher. (AR 30.)

### III. PLAINTIFF'S BACKGROUND, STATEMENTS, AND VOCATIONAL EXPERT'S FINDINGS

At the time of the administrative hearing, Plaintiff was forty-five years old. (AR 79.) She had a high school education (AR 80) and previously worked as a janitor, waitress, and receptionist. (AR 93.) After the onset of her alleged disability, Plaintiff was incarcerated, but after she was released she worked three jobs.[1] (AR 75, 77.) Despite the short-term work, Plaintiff claimed she was disabled and unable to maintain employment because of migraines, back pain, and interpersonal difficulties. (AR 81-84.)

The first time Plaintiff argued she suffered from debilitating physical impairments (i.e. back and neck pain) was at the administrative hearing. (AR 24, 84, 106, 131 253-59.) At the hearing, Plaintiff testified that she had difficulty lifting objects with her right arm, "sometimes" had back pain, and was "sometimes" unable to sit for long periods. (AR 80.) However, she admitted she was able to lift about 20 pounds if able to utilize both hands. (AR 85.)

While she could not pinpoint a precise amount of time she could sit or stand, she said that after standing about 20 minutes she would need a break, and sometimes could not sit for long periods. *Id*. Plaintiff also claimed she had migraines approximately 2-3 times a week. (AR 84.)

Plaintiff alleged that her back pain increased after falling of a horse. (AR 86.) After the first fall, Plaintiff continued to ride but fell off the horse again in September 2015, causing more pain. *Id*. Plaintiff admitted that before the 2015 tumble off the horse, she was a quotidian runner. (AR 87.) After the fall, she stated she experienced shooting pain down her legs that increased when she kneeled or bent down. (AR 89.) This sensation had become more frequent in the months leading up to the hearing. (AR 90.)

At home, Plaintiff stated that she lived with three dependent children, ages seventeen, twelve, and seven, as well as a disabled husband with heart disease. (AR 79.)

---

[1] Plaintiff's earnings from these jobs did not exceed the threshold amount to constitute substantial gainful activity. (AR 23.)

- 4 -

She contended she cleaned her house "a lot," cooked, watched television, and read. (AR 85.) While doing these activities, however, she claimed that she was "up and down" approximately every 10-15 minutes because of her pain. (AR 85, 90.)

As far as her mental impairments, Plaintiff was first diagnosed as bipolar and borderline personality in 2008-2009. (AR 308-377.) Further, she was deemed seriously mentally ill (SMI) in March 7, 2008. (AR 320-21, 378-79.)

Plaintiff claimed that during a non-medicated, manic episode, she stole a coworker's credit card and made fraudulent charges on it. (AR 78, 340.) Allegedly, she knew her actions were wrong but felt "invincible." (AR 455.) This resulted in Plaintiff's incarceration from October 22, 2009 to August 2013. (AR 77.) Plaintiff said she received medications while in jail;[2] however, this is not indicated in her medical records from the Department of Corrections. (AR 562-596.)

Plaintiff asserted that her medications caused dizziness, drowsiness, and nausea. (AR 84.) In addition, she claimed the medications affected her ability to focus and caused anxiety. *Id*.

Finally, Plaintiff testified that she was unable to maintain employment because she had difficulty getting along with others. (AR 81-82.) She stated she lost several jobs because she yelled uncontrollably at customers, co-workers, employers, and family. (AR

   *a. Vocational Expert Testimony*

The ALJ asked the Vocational Expert (VE) whether a hypothetical individual similar to Plaintiff, with no limits on exertional levels, but limited to unskilled, solitary work and minimal contact with the public, coworkers, or supervisors would be able to perform Plaintiff's past work. (AR 93.) The VE stated with those conditions Plaintiff could

---

[2] The record provides conflicting information about Plaintiff's use of behavioral health medication during incarceration. One report indicates she used lithium and Depakote (AR 274), another states that she stopped medication so she could be placed in minimum security and suffered no manic episodes. (AR 102.) Plaintiff provided medical records during her incarceration but they did not pertain to treatment for mental health. (AR 562-596.)

perform her past work as a janitor (*id.*), and could also perform as a stock clerk or dishwasher (AR 94). However, if the hypothetical person were limited to sedentary work, there would be no employment available in the national economy. (AR 95.)

## IV. STANDARD OF REVIEW

The Court has the "power to enter, upon the pleadings and the transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The factual findings of the Commissioner shall be conclusive so long as the findings are based upon substantial evidence and there is no legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is "more than a mere scintilla[,] but not necessarily a preponderance," *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)). Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). Moreover, the Commissioner, not the Court, is charged with the duty to weigh the evidence, resolve material conflicts in the evidence, and determine the case accordingly. *Matney*, 981 F.2d at 1019. However, the Commissioner's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence. . . . Rather, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." *Tackett*, 180 F.3d at 1098 (internal quotation marks and citation omitted).

## V. PLAINTIFF'S SEVERITY AND DEGREE OF IMPAIRMENT

When evaluating the degree to which Plaintiff's symptoms limit her ability to work, the ALJ first considers (a) whether there is an impairment that would reasonably be expected to cause the claimant's symptoms, and (b) the severity of claimant's ailments, including intensity, persistence, and limiting effects of alleged symptoms. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling (SSR) 16-3p (Mar. 28, 2016). For mental

impairments, an ALJ must consider four areas of functioning (called paragraph B criteria): (1) activities of daily living; (2) social functioning; (3) concentration, persistence and pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c), 416.920(c). The ALJ considers the paragraph B criteria at two intervals. First the ALJ evaluates the criteria to determine the degree of claimant's impairments (degrees include: none, mild, moderate, marked, and extreme). 20 C.F.R. § 404.1520a(d)(2). If the ALJ deems that the impairment is severe (generally above mild degree of impairment), 20 C.F.R. § 404.1520(a)(d)(1), the ALJ considers the criteria again to determine whether the alleged impairment meets the criteria for the listed mental impairment, 20 C.F.R. § 404.1520a(d)(2).

Paragraph B requires two or more of the of the following symptoms: "marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." (AR 7.) "A '[m]arked limitation' means that functioning in these areas independently, appropriately, effectively, and on a sustained basis, is 'seriously limited.'" *Lamonda v. Berryhill*, No. 3:16-cv-00587-HDM-WGC, 2017 WL 8222654, at *5 (D. Nev. Dec. 22, 2017) (citing 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(F)(2)(d)).

   *a. RFC Considered Concentration, Persistence, and Pace*

Where an ALJ has incorporated the restrictions in concentration, persistence, and pace included in a medical opinion into the RFC, she does not err. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir 2008); *Rainsford v. Comm'r Soc. Sec. Admin.*, No. CV-17-00530-TUC-EJM, 2018 WL 6499669, at *8 (D. Ariz. Dec. 11, 2018) (ALJ's RFC need only incorporate credible limitations supported by substantial evidence and "be consistent with the restrictions identified in the medical testimony.") (quoting *Dschaak v. Colvin*, 2015 WL 181803, *3 (D. Or. Jan 14, 2015)).

Plaintiff claims that by limiting merely the complexity of work in the RFC, the ALJ did not properly address Plaintiff's inability maintain concentration, persistence, or pace for prolonged periods. (Doc. 18 at 12.) The Court finds that the ALJ articulated Plaintiff's concentration, persistence, and pace difficulties and appropriately accommodated them

when formulating the RFC.

At step three, the ALJ determined that Plaintiff suffered moderate difficulties in concentration, persistence, and pace. (AR 25.) But the ALJ added that, in general, Plaintiff was "alert and oriented with good memory, concentration, insight and judgment." *Id*. Plaintiff encountered difficulty, however, when stressed. *Id*. The ALJ explained that in particular it was stressful *social interactions* that affected Plaintiff's ability to concentrate. *Id*.

The RFC permitted "a full range of work at all exertional levels but with certain nonexertional limitations. Specifically, assigned work must be limited to unskilled tasks learned in 30 days or less not performed as a member of team or crew . . . [and with] no more than occasional, brief, intermittent, incidental contact with coworkers, supervisors and public." (AR 26.)

When formulating the limitations in the RFC, the ALJ gave great weight to state agency medical consultant Dr. Raymond Novak M.D., who affirmed that Plaintiff had moderate limitations in concentration, persistence, and pace. (AR 104.) But, Dr. Novak noted there was no significant limitation in Plaintiff's ability to carry out short and simple instructions, maintain a regular schedule without supervision, or make uncomplicated work-related decisions. *Id*. Dr. Novak also noted that Plaintiff's concentration was good while on medication, and she performed well in highly structured settings with expectations. (AR 105.) For example, Dr. Novak noted that even while unmedicated,[3] in the structured setting of prison Plaintiff denied having manic episodes. (AR 102.)

The ALJ also considered that even when off her medications, Plaintiff received a Global Assessment of Functioning score of 75, which showed only mild mental limitations. (AR 28.)

There is nothing in the medical record suggesting Plaintiff's moderate limitations

---

[3] Plaintiff claims the record shows she was receiving medication while in jail. (Doc. 18 at 3 (citing AR 386).) This statement is inaccurate, the cited record only indicates that Plaintiff stated she "has taken Depakote, lithium, Seroquel in past." *Id*. Plaintiff appears to have spent at least part of her incarceration unmedicated. (AR 102.)

with concentration, persistence, and pace would affect her ability to perform unskilled simple tasks, especially when properly medicated. Overall, the medical record shows that Plaintiff did exhibit "good memory, concentration, and insight" (AR 25), even when she was emotionally upset (AR 313, 384, 416, 439, 441, 445, 449, 455). In fact her daily activities: cooking, cleaning, training her dog (AR 398), running errands (AR 431), driving (AR 80), and watching television (AR 85) belie any conclusion that Plaintiff's attention difficulties would prevent her from engaging in work as defined in the ALJ's RFC. It is clear the ALJ considered Plaintiff's difficulties with concentration but determined that Plaintiff was capable of focusing on unskilled tasks as long as she was not additionally distracted or stressed by social interactions with others. The ALJ incorporated these stressors affecting concentration into the RFC by minimizing social interaction. The Court cannot find that the ALJ erred in this instance.

### b. *Physical Limitations Not Severe*

"An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical . . . ability to do basic work activities." 20 C.F.R. §404.1522.

Plaintiff argues that because the ALJ did not include Plaintiff's physical impairments when formulating the RFC, the ALJ committed harmful error. (Doc. 18 at 14.) Plaintiff claims that because evidence existed suggesting Plaintiff's limitations had "more than a minimal effect" they should have been included in the RFC. *Id*. The Court disagrees. Plaintiff's own testimony and a substantial portion of the medical evidence supports a finding that Plaintiff can perform work at all exertional levels.

First, the ALJ noted that Plaintiff had not raised the issue of physical impairments during her initial application or upon reconsideration, and only claimed physical disability at the administrative hearing. (AR 24.) Furthermore, the ALJ stated that Plaintiff's intermittent ability to work suggested that her "daily activities have, at least at times, been somewhat greater than [Plaintiff] generally reported." (AR 23); *see Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (employment combined with other activities may undermine a claimant's alleged limitations). In addition, although Plaintiff's records

suggest her pain was initially caused by a fall in prison (AR 535), there are no medical records of this fall or any subsequent pain during that time. Further, the ALJ noted that an examination of her spine, shoulders, and extremities were normal (AR 24, 562, 570), and medical records showed Plaintiff's low back exhibited "normal strength, reflex and gait . . . no compression fractures and otherwise wholly unremarkable findings." (AR 24, 389, 399, 486.) Likewise, her knee and shoulder were unremarkable and showed no sign of fracture or dislocation. (AR 24, 548.) Plus, the ALJ considered Dr. L.A. Woodard's assessment, finding it consistent with the record and affording it great weight. (AR 24.) Dr. Woodard found Plaintiff's physical impairments were mild, within normal limits, and not severe. *Id.*

Moreover, the ALJ noted that despite Plaintiff's allegations of migraines a few times a week, there was no record of migraines in the medical evidence. (AR 27.) Furthermore, Plaintiff's claims of side effects from the medication were not credible because she had previously denied side effects from her medications and had positive results with medication. (AR 27, 102, 430, 437, 445, 449.)

Finally, the ALJ stated that Plaintiff's impairments were not treated aggressively in the past, nor was aggressive treatment anticipated for the future. *Id.* Plaintiff's pain has been treated mild pain medication and muscle relaxers. (AR 80); *see Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (Medical records showing alleged impairments were treated conservatively and claimant's functioning was normal can provide sufficient reason to find impairment is less severe than alleged).

The record also shows that Plaintiff exercised (AR 410, 420, 516) and ran daily (AR 87, 436, 441). Plaintiff conceded that she was able to lift up to 20 pounds (AR 87), "spen[t] her days running errands for the household" (AR 382), cleaned her house "a lot" (AR 85, 90, 431), and cooked (AR 85, 431). She also rode horses until 2015. (AR 86.) And while she claimed in the administrative hearing that she often needed to take breaks, she also incongruously stated she only "sometimes" encountered back pain or needed to sit down. (AR 80.) These activities are inconsistent with an assertion that Plaintiff is unable to handle the physical demands of a job. In addition, at times during her alleged disability was

gainfully employed (AR 243, 249-50), undermining her claims that her physical impairments precluded employment. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2011) (reasonable for ALJ to conclude that activities during alleged disability that were similar to past work undermined alleged level of impairment).

The ALJ provided viable reasons for finding Plaintiff's physical impairments were not severe and that Plaintiff could perform work at all exertional levels. This determination was neither legal error or unsubstantiated by the record.

## VI. Plaintiff's Subjective Symptoms

After determining that a claimant's objective medical records show an impairment which could cause the alleged symptoms, the ALJ must consider whether the claimant's alleged symptoms are consistent with the medical evidence in its entirety. 20 C.F.R. § 404.1529, 416.929. To reject a claimant's testimony about subjective impairment, the ALJ must provide "specific, clear, and convincing reasons" that are supported by substantial evidence. *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). If an ALJ shows that a claimant "is able to spend a *substantial part* of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1998)) (emphasis and alterations in original).

### a. Physical Impairment

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to discount Plaintiff's subjective symptoms. (Doc. 18 at 2, 7-11.) The Court finds the ALJ provided several convincing reasons why she did not find Plaintiff's physical impairments as severe as alleged, and demonstrated that Plaintiff was capable of engaging in work for a substantial portion of the day.

In her decision, the ALJ stated that Plaintiff claimed her back and shoulder pain limited her in the following ways: (1) difficulty moving and spasms in right arm, (2) back

pain, (3) problems sitting or standing for long periods, and (4) vertigo and nausea from pain medication. (AR 26-27.) However, the ALJ noted inconsistencies between Plaintiff's alleged symptoms and her own activities. For instance, the ALJ explained that Plaintiff admitted she could (1) carry up to 20 pounds with both hands; (2) sit 30 minutes and stand 20 minutes before needing to rest; (3) cook, clean, and perform household chores; and (4) watch television (AR 27.) As noted earlier, the ALJ observed that the medical records for Plaintiff's pain were unremarkable, and no aggressive treatment was utilized or anticipated. (AR 25.) Further, the ALJ retorted that Plaintiff had not raised these physical ailments until the administrative hearing, which undermined her allegation of disabling pain. (AR 24.) Finally, Dr. Woodard's assessment also supported the ALJ's determination. *Id*.

Plaintiff's employment during her alleged disability also undermined her claim of disabling pain. (AR 23.) Although Plaintiff expressed some difficulty performing tasks with her right hand, the ALJ commented that Plaintiff alleged the primary reason she stopped working as a cleaner, server, and golf cart driver because of her inability to get along with others. (AR 80-81.) Furthermore, while incarcerated, Plaintiff was able to work as a dishwasher, cook, and janitor. (AR 82.) As noted previously, there are no medical records for her period of incarceration demonstrating Plaintiff suffered from any back or shoulder pain. In addition, the ALJ noted that Plaintiff conceded her status as a felon was a major reason she could not secure work, not necessarily her physical impairments. (AR 27, 82-83.) The ALJ's finding that Plaintiff's physical impairments were not severe was neither legal error or unsubstantiated by the record.

### *b.* **Mental Impairment**

As for Plaintiff's mental impairments, the Court determines that the ALJ appropriately explained the discrepancy between Plaintiff's alleged symptoms and the medical evidence. (AR 27.)

Plaintiff testified that she was unable to work because "being around people is very difficult" (AR 80) and she would often lose her temper. (AR 26, 80-81.) The ALJ stated that her allegations were not as severe as alleged because her treatment records showed

that overall she was "pleasant and cooperative" (AR 25), able to maintain eye contact (AR 25, 382, 383-85, 388, 395, 416, 505, 537), and could care for her family (AR 25, 79, 431). Furthermore, the ALJ noted that Plaintiff had been intermittently treated with conservative mental health therapy and medication. (AR 27.) She also engaged in social services assistance, utilizing employment and marital therapy, and obtaining financial assistance with utilities. *Id*. The ALJ further indicated that Plaintiff's GAF score showed only a moderate limitation in functioning. *Id*. Finally, the ALJ did not give much credence to the non-medically acceptable source's assessment of Plaintiff as seriously mentally ill in 2008, stating that this evaluation held no bearing on whether claimant was mentally disabled as defined by the Commissioner. *Id*.

The record does not reflect Plaintiff's alleged inability to cope with others to the extent she alleges. Plaintiff has suffered some serious stressors, and understandably has mildly lost her temper and become emotional at times. (AR 384, 391, 451, 455, 472.) However, these events do not demonstrate Plaintiff's interpersonal impairment, but instead instantiate her resilience. For instance, the Court acknowledges that Plaintiff raised her voice at a receptionist over a $3.00 copay in September 2013. (AR 391.) In context, however, the incident does not support a manic bipolar incident, but rather serious family and financial pressures. A month prior, Plaintiff took the bus to an appointment, despite not having bus fare to return home. (AR 385.) At the time, Plaintiff was also worried because she had no money for medications. *Id*. Plaintiff was living with her disabled husband, three children between the ages of four and fourteen, two grown step-daughters (who notably were not financially contributing to the household's expenses (AR 393)), and two step-granddaughters. (AR 386.) Later that day, Plaintiff was upset because she was again told she would have to pay for medications. (AR 387.) Plaintiff cried, but the case manager clarified that she would not be responsible for payment, Plaintiff thanked the case manager for his assistance. *Id*.

When she returned the following month–presumably with the same living and financial situation–and was asked to provide the copay, she became upset and raised her

voice. (AR 391.) But, the record indicates that the outburst was short-lived; once Plaintiff was redirected she calmed down and again expressed gratitude. (AR 388.) Given the circumstances, a raised voice does not connote an inability to function, but a temporary loss of patience.

In a separate instance, Plaintiff discovered in November 2015 that her husband had not been paying the power and gas company, leaving a $1,154.09 bill and the threat of disconnection. (AR 472.) The ensuing spousal argument resulted in Plaintiff's husband physically assaulting her. *Id.* Despite being reasonably emotional and overwhelmed, Plaintiff was able to figure out how to get financial assistance, and even attempted to pick up additional shifts at her job. *Id.* Within days, Plaintiff was also engaging in therapy and focusing on breathwork to calm her. (AR 465.)

The ALJ acknowledged Plaintiff's alleged ability to adjust to environmental stressors, but clearly and convincingly explained how her allegations were inconsistent with the evidence. The ALJ noted that Plaintiff was highly adaptable given her learned coping skills, community resources, and stabilizing medication. (AR 28.) The fact that Plaintiff has been capable of caring for her household, attending group therapy, and engaging in exercise is nothing short of remarkable given her environmental stressors. However, substantial evidence supports the ALJ's contention that despite numerous setbacks, Plaintiff's alleged mental impairments are not debilitating. To the extent that her mental impairments limit her ability to get along with others, the ALJ has properly accounted for those limitations in the RFC. As such, the ALJ's determination at about Plaintiff's subjective symptoms was not legal error.

Accordingly, **IT IS ORDERED**:

1. The Commissioner's decision denying benefits is **AFFIRMED**.
2. The Clerk of Court is directed to enter judgment accordingly.

Dated this 23rd day of January, 2019.

_____
Bernardo P. Velasco
United States Magistrate Judge

- 14 -